IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TRACI BAHENA,

                          Plaintiff,

              v.                                           OPINION and ORDER

JEFFERSON CAPITAL SYSTEMS, LLC, and                       17-cv-461-jdp
MESSERLI & KRAMER, P.A.,

                          Defendants.

Plaintiff Traci Bahena is suing defendants Jefferson Capital Systems, LLC and Messerli & Kramer, PA under the Wisconsin Consumer Act (WCA) and the Fair Debt Collection Practices Act (FDCPA). Bahena alleges that defendants brought a state-court debt collection action against her when they did not have a legal right to do so, because defendants did not provide the required notice of the right to cure before filing the suit. She also alleges that Messerli violated the FDCPA by falsely implying that lawyers had independently reviewed her case.

Jefferson Capital and Messerli have filed separate motions for summary judgment on all of Bahena's claims. Dkt. 68 and Dkt. 77. They assert essentially legal defenses, which the court rejects for reasons explained in this opinion. On the notice-of-right-to-cure claims, the material facts are undisputed: Bahena did not receive the notice to which she was entitled, and defendants had reason to know this. Based on those facts, a reasonable jury would find that defendants violated Bahena's rights. So the court will deny both motions for summary judgment. Because it appears that a trial is needed only on damages, the court is inclined to grant summary judgment to Bahena on liability. But it will give the parties an opportunity to explain why doing so would not be appropriate.

The remaining FDCPA claim concerns whether Messerli falsely represented that a lawyer made a reasoned, professional judgment that it had the right to sue Bahena. The parties dispute how much time and attention Messerli attorneys devoted to Bahena's case. A reasonable jury could credit Bahena's version of the facts and find that Messerli's attorneys were not meaningfully involved in preparing the debt collection action. The court will deny Messerli's motion for summary judgment on that claim.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

In 2010, Bahena opened a consumer credit card account with Fingerhut. In 2015, Bahena fell behind on payments. Her January 2015 billing statement indicated that the account was past due, that she had been charged a $26.00 late fee, and that she needed to pay $148.88 by February 11, 2015 to "keep [her] account in good standing." Dkt. 98, ¶ 6. Fingerhut sent Bahena letters on January 15, January 23, and January 30, 2015, alerting her that her account was past due and requesting payment. Dkt. 71, at 8–10.

In February 2015, Bahena paid Fingerhut $148.88 which eliminated her past-due minimum payment balance, although she still owed almost $1400 on the account. She made additional payments in April, May, and June, but she ceased making payments in July because she had "[n]o funds, no money, no job." Dkt. 73 (Bahena Dep. 33:8). At that point, she stopped reviewing her online account statements and began ignoring mail and email communications about her account. Fingerhut continued to send monthly email notifications advising that her account was past due. It also sent letters on July 15, August 4, August 14,

and August 25, 2015, notifying Bahena that the account was delinquent and urging her to make a payment immediately. Dkt. 71, 12–15.

Fingerhut charged off the balance of Bahena's account in December 2015. By that time, she owed $1,775.06. That same month, Jefferson Capital Systems, a debt buyer and debt collector, purchased the charged-off account. Dkt. 75-3, at 2. Jefferson Capital received Bahena's last 11 account statements and some basic information about Bahena and her Fingerhut debt, including her name and location, how much she owed, the date the account was opened and charged off, and the date of last payment. Jefferson Capital then referred Bahena's account to a series of agencies that attempted to recoup the debt without success. Eventually, the account was placed with Messerli & Kramer, a law firm that focuses on consumer debt collection. Messerli received the same information that Jefferson Capital received.

In September 2016, Messerli sent Bahena a dunning letter demanding payment on Jefferson Capital's behalf, which Bahena ignored. In January 2017, Bahena received a summons and small claims complaint notifying her that she was being sued in Lafayette County Circuit Court by "Jefferson Capital Systems, LLC . . . c/o Messerli & Kramer PA" for $1,870.72 in credit card debt. Dkt. 70-3, at 1. *See Jefferson Capital Sys., LLC v. Bahena*, No. 17-sc-11 (Lafayette Cty. Cir. Ct. filed Jan. 18, 2017). The small claims complaint was signed by Jillian Walker, a Messerli lawyer representing Jefferson Capital.

Bahena retained her own lawyer, Briane Pagel. On April 26, 2017, Messerli mailed to the state court a proposed order voluntarily dismissing the state-court collection action with prejudice. Jefferson Capital says that it did so "due to the heavy cost anticipated in litigating the small claims case." Dkt. 70, at 6. Pagel sent Messerli a notice of counterclaim on April 30,

but the state court dismissed the case on May 3, apparently without docketing any counterclaim. Bahena filed this federal lawsuit a few months later. Bahena alleges that the stress and humiliation of being sued caused her to lose sleep, drink alcohol excessively, and feel suicidal, among other things.

The court will provide additional material facts in the analysis section.

ANALYSIS

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing defendants' motions for summary judgment, the court construes all facts and draws all reasonable inferences in Bahena's favor. *Id.* at 255. "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleischman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). Under Rule 56(f), the court can grant summary judgment for a nonmovant when appropriate, so long as it provides the moving party notice and a reasonable time to respond.

## A. Overview of claims

Bahena asserts three causes of action, all of which arise out of the debt collection action that defendants filed against Bahena in Wisconsin state court. The first claim relies on 15 U.S.C. § 1692(e), which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Bahena

says that by filing a debt collection lawsuit, both defendants represented that they had the right to sue her. This was false, Bahena says, because a prerequisite to filing a debt collection lawsuit in Wisconsin is complying with the requirement in Wis. Stat. § 425.105 to provide the debtor notice of her right to cure the default, something that defendants did not do.

The second claim relies on the same alleged conduct but arises under Wis. Stat. § 427.104(1)(j), which prohibits debt collectors from claiming, attempting, or threatening to enforce a right with knowledge or reason to know that the right does not exist. Bahena says that defendants knew or had reason to know that they did not have the right to file the debt collection lawsuit because Bahena had not received the notice required under § 425.105.

Bahena's third claim is against Messerli only and arises under 15 U.S.C. § 1692e(3), which prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." Bahena says Messerli violated § 1692e(3) by filing the debt collection lawsuit without "meaningful attorney involvement." Dkt. 25, ¶ 58.

Defendants seek summary judgment on each of these claims.

**B. Notice-of-right-to-cure claims**

Bahena's first two claims are predicated on her contention that she was not provided a notice of right to cure that complied with the requirements of the WCA. Under the WCA, debt collectors must provide a consumer with notice of her right to cure her default (i.e., pay the debt) before they can sue on the debt. *See* Wis. Stat. § 425.105. The statute specifies the information that the notice must contain. *See* Wis. Stat. § 425.104. Bahena says she never received a WCA-compliant notice, which means that defendants had no right to file a debt collection action. So by filing that action, Bahena says, defendants falsely implied that they

had the right to sue her (violating the FDCPA) and asserted a right that they knew or had reason to know they didn't have (violating the WCA).

In response, defendants raise three main arguments. First, they argue that Bahena was not entitled to notice under the WCA in the first place. Second, they argue in the alternative that Bahena did in fact receive notice that complied with the WCA. Third, they argue that, even assuming notice was not provided, Bahena has failed to adduce evidence that defendants had knowledge or reason to know this under the WCA, or that it constituted a materially false representation under the FDCPA.

The court will consider each of defendants' arguments in turn.

### 1.  Whether Bahena had a right to notice

Defendants assert five reasons why Bahena was not entitled to any WCA-compliant notice of her right to cure: (1) Bahena did not have a right to cure under the statute, so she was not entitled to notice of that right; (2) Bahena could not have cured her default by the time Jefferson Capital acquired her debt, so defendants could not provide notice of that right; (3) the WCA does not require a creditor to send a notice of right to cure default prior to commencing a suit; (4) Bahena had actual notice of her rights; and (5) compliance with § 425.104 would not have influenced Bahena's behavior, so any error was immaterial.

### a.  Right to cure under the statute

Section 425.105 of the WCA states that "if the customer has the right to cure under this section," a merchant may commence an action only after that customer has been provided with notice of her right to cure. Wis. Stat. § 425.105(1). A customer does not have a right to cure, or, by extension, a right to notice of her right to cure, if the following criteria are met:

> A right to cure shall not exist if the following occurred twice during the preceding 12 months:

> (a) The customer was in default on the same transaction or open-end credit plan;
>
> (b) The creditor gave the customer notice of the right to cure such previous default . . . ; and
>
> (c) The customer cured the previous default.

Wis. Stat. § 425.105(3).

Defendants say that Bahena met these statutory criteria at the time she defaulted in July of 2015 because "she was in default on the open-end credit plan twice during the preceding 12 months, . . . she was provided notice of the right to cure such previous default, and . . . she did in fact cure the previous default." Dkt. 70, at 9. But § 425.105(3) requires that all three criteria occur twice within the preceding twelve months. It is undisputed that Bahena missed at least two payments in 2015—one in January, which she rectified on February 11, and again starting in July, when she ceased making payments. But there is no evidence that Bahena was twice in default, nor is there evidence that she twice received notice of her right to cure and twice cured those defaults.

Under the WCA, "default" on an open-end credit plan occurs only when a customer "fail[s] to pay when due on 2 occasions within any 12-month period." Wis. Stat. § 425.103(2). So when Bahena missed that first payment in January, she was not yet "in default" under the WCA; the past-due letters Fingerhut sent her did not qualify as notices of right to cure; and her February 11 payment did not cure a default. At the earliest, Bahena was "in default" when she missed the second payment in July. At that point, she still had a right to cure under § 425.105(3), so she was entitled to notice under § 425.105(1).

### b. Ability to cure

Defendants say that Bahena had no right to cure at the time Jefferson Capital acquired Bahena's account because she *couldn't* cure the debt then. Jefferson Capital is a debt buyer, not the original creditor. And by the time it acquired Bahena's account, the account was long past-due and charged-off. So, the argument goes, there was nothing Jefferson Capital could do to restore Bahena to her pre-default position.

Defendants point to no express language in the WCA that would give a debtor a right to cure only if the original creditor still owns the debt, which is reason enough to reject this argument.

But defendants contend that there should be an exception to the notice requirement when there is no possibility of restoring a consumer to her pre-default position. They draw this concept from *Rosendale State Bank v. Schultz*, 123 Wis.2d 195, 365 N.W.2d 911 (Ct. App. 1985), where the court of appeals explained that "the purpose of requiring the notice of right to cure is to give the customer an opportunity, before the merchant accelerates the obligation, to restore his or her loan to a current status and thus to preserve the customer-merchant relationship." 123 Wis.2d at 199. The *Rosendale* court went on to hold that mortgagors who had defaulted had no right to cure under the WCA because the obligation was "entirely past due and fully owed, therefore making it impossible for the customer to restore the loan to current status and continue a relationship with the merchant." *Id.*

The principle articulated in *Rosendale* makes little sense when applied to the market for charged-off credit card debt. Judge Clevert in the Eastern District of Wisconsin has already rejected the application of *Rosendale* to installment debt that had been charged off and sold. In *Johnson v. LVNV Funding*, No. 13-c-1191, 2016 WL 676401 (E.D. Wis. Feb. 18, 2016), a debt

buyer invoked *Rosendale* to avoid liability for suing a consumer who had not been provided notice of her right to cure. Judge Clevert's reasoning is persuasive:

> That WaMu [the original creditor] sold the written-off debt to LVNV [the debt buyer] did not convert [plaintiff's] installment account triggering a right to cure to a final-payment-type or fully-owed account as in *Rosendale*. What WaMu and LVNV did regarding accounting and ownership of [plaintiff's] account after a default cannot change the nature of [plaintiff's] credit relationship with WaMu and eliminate her rights under the WCA. Consumers should not lose their consumer rights based on a creditor's choice to sell or assign the debt.

*Johnson*, 2016 WL 676401, at *5. Eliminating the notice-of-right-to-cure requirement for debt buyers would allow creditors to skirt the notice-of-right-to-cure requirement entirely simply by selling their charged-off accounts to debt buyers. This would subvert the purpose of the WCA, which affords consumers a meaningful opportunity to cure default and requires right-to-cure notices except in specified circumstances. *See* Wis. Stat. Ann. § 425.105(3), (3m). Defendants do not distinguish *Johnson* or point to any authority supporting its proposed application of *Rosendale* in this context.

The court will follow *Johnson*. A debtor's right to notice under the WCA is not contingent on the owner of the debt. If a debt buyer wishes to enforce the debt in court, it must provide notice of right to cure or confirm that the creditor has done so.

### c. Permissive language in the WCA

Messerli contends that the language of the "WCA is permissive and does not require a creditor to send a notice of right to cure default prior to the commencement of a suit." Dkt. 78, at 7. It cites Wis. Stat. § 425.104(1), which provides that "[a] merchant who believes that a customer is in default *may* give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default." (emphasis Messerli's)).

Section 425.104 establishes requirements regarding what information a right-to-cure notice must contain, and it is permissive in the sense that it does not obligate merchants to send such notices whenever a customer defaults. But § 425.105 lays out the requirements for merchants who wish to *sue* on a default, and this section makes providing notice a mandatory prerequisite to suit. Wis. Stat. § 425.105(1) ("A merchant may not . . . commence any action . . . unless the merchant believes the customer to be in default . . . , and then only upon the expiration of 15 days after a notice is given pursuant to § 425.104 if the customer has a right to cure under this section."). Here, Messerli filed a lawsuit, so providing a notice of right to cure default was mandatory.

### d. Actual notice

Messerli argues that it did not have to comply with Wis. Stat. § 425.105 because Bahena "was actually on notice that Jefferson Capital was seeking the amount due." Dkt. 78, at 9. But whether Bahena had actual notice that Jefferson Capital was seeking payment is irrelevant. The WCA does not require "notice" in the abstract; it identifies particular requirements the debt collector must follow. Messerli doesn't cite any provision of the WCA or any other authority that recognizes an "actual notice" exception.

### e. Lack of notice was harmless

Messerli argues that "Bahena cannot show that the absence of a notice to cure from Jefferson Capital was material to any action she chose to make," because she wasn't opening her account statements, so a right-to-cure notice would not have influenced her behavior. *Id.* This is also irrelevant. Messerli cites no provision of the WCA that excuses noncompliance when harmless or when compliance would be immaterial to the debtor's actions.

## 2. Whether Bahena received notice that complied with Wis. Stat. § 425.104

Defendants argue in the alternative that Bahena *was* provided a right-to-cure notice that complied with the WCA. There are three categories of documents that defendants say satisfied the WCA's requirements: the letters Fingerhut sent to Bahena in January 2015; the letters Fingerhut sent to Bahena in July and August of 2015; and the monthly billing statements Fingerhut sent to Bahena during the months that she was missing payments. But for the reasons explained below, the court concludes that none of these communications qualify as a notice of right to cure under § 425.104(2).

### a. January 2015 letters

To comply with § 425.104 of the WCA, a right-to-cure notice must contain:

- The name, address, and telephone number of the creditor

- A brief identification of the consumer credit transaction

- A statement of the nature of the alleged default

- A clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default

- The exact date by which the amount must be paid or performance tendered

- The name, address, and telephone number of the person to whom any payment must be made, if other than the creditor

Wis. Stat. § 425.104(2). Courts construe § 425.104(2) strictly, so even minor defects or omissions are enough to render a notice of right to cure invalid. *Indianhead Motors v. Brooks*, 297 Wis. 2d 821, 825–26, 726 N.W.2d 352, 354–55 (Ct. App. 2006).

The letters Fingerhut sent Bahena on January 15, January 23, and January 30, 2015, do not satisfy § 425.104(2) because they do not include an exact date by which the amount

must be paid to cure the default (other than advising Bahena to send her payment "today"). *See* Dkt.71, at 8–10. Nor do they include any sort of itemization of delinquency charges, even though it is undisputed that Bahena was being charged a "late fee" every time she missed a payment.

In addition, the January letters do not qualify as a notice under § 425.104(2) because Bahena was not yet "in default" in January 2015. As already discussed, the WCA defines "default" as "failure to pay when due on 2 occasions within any 12-month period." Wis. Stat. § 425.103(2). Bahena's account history indicates that she timely made all payments in 2014, and that her first missed payment was in January 2015. *See* Dkt. 71, at 6–7. Because she was not in default within the meaning of the WCA, the January 2015 letters could not be valid notices of Bahena's right to cure. *Credit Acceptance Corp v. Chao Kong*, 344 Wis. 2d 259, 265, 822 N.W.2d 506, 509 (Ct. App. 2012) (notice of right to cure was premature and therefore invalid because debtors were not in default within the meaning of the WCA at the time the notice was sent).

### b. July and August 2015 letters

Bahena missed a second payment in July 2015, so she was then "in default" within the meaning of § 425.103(2). Correspondence from Fingerhut sent after that second missed payment could qualify as notice of right to cure. But the July and August 2015 letters are missing at least two pieces of required information.

First, there are date problems. Three of the four letters contain no exact date by which the amount must be paid to cure the default. *See* Dkt. 71, at 12, 14–15. The August 4 letter warns that if Fingerhut did not "hear from [Bahena] by 08/14/2015," it would reduce her credit limit to zero and consider further collections activities. *Id.*, at 13. The letter provides an exact

date, but that date was a mere ten days from the date on which the notice was given. Under the WCA, a merchant must give customers at least 15 days in which to cure the default. *See* Wis. Stat. § 425.105(1); *Quorum Fed. Credit Union v. Rumpf*, No. 2015AP201, 2016 WL 8606258, at *2 (Wis. Ct. App. May 24, 2016) (notice did not include the "exact date by which the amount must be paid" for the purposes of § 425.104(2) where the notice gave the debtor only 12 days to cure the default). And second, none of the four letters contain an itemization of delinquency charges, which also renders them defective.

### c. Billing statements

The last category of documents is the monthly Fingerhut billing statements Bahena received via email. Defendants contend that these statements contained all of the information required under § 425.104(2). But even assuming that they did, billing statements are not sufficient to give notice of a right to cure to an unsophisticated consumer, so they cannot qualify as right-to-cure notices under the WCA.

The purpose of §§ 425.104 and 425.105 is to provide debtors with a right to cure, and a meaningful opportunity to exercise that right, by requiring that creditors provide clear notice of the right. It would undermine this purpose if the merchant could provide notice of the right to cure by including all the information specified in § 425.104(2) on routine billing statements, regardless of the status of the account. Again, the court draws guidance from Judge Clevert's reasoning in *Johnson*, where he concluded that monthly billing statements do not satisfy the notice-of-right-to-cure requirement as a matter of law:

> Allowing the required information for a notice of right to cure to be buried in information that is already given on a monthly basis in a billing statement can be considered unfair and deceptive. An unsophisticated consumer would reasonably not know or understand the difference. Implicit in the concept of a notice of a right to cure is that the document, even if no specific words or

> title is required, provide notice. A document identical to or that would reasonably be mistaken for simply a monthly billing statement does not satisfy the requirement.

*Johnson*, 2016 WL 676401, at *6. The bottom line is that not every document that includes the information specified § 425.104(2) is really a notice of a right to cure. And a routine billing statement would be a good example of a document that no one would consider to be a "notice of right to cure."

Defendants argue that Judge Clevert "expressed some doubt that billing statements can be notice of right to cure," but that "he did not say that they never could be and limited his holding to the billing statements at issue." Dkt. 99, at 10. According to defendants, although the billing statements in *Johnson* did not provide adequate notice, Fingerhut's billing statements do provide such notice.

Defendants misread *Johnson*. Judge Clevert concluded that the billing statements at issue did not meet the statutory requirements. *See Johnson*, 2016 WL 676401, at *6 ("Moreover, even if monthly statements could constitute a notice of right to cure, these monthly statements do not satisfy the requirements."). But *Johnson* also states clearly that it would be unfair and deceptive to bury the required notice information in routine billing statements. *Id*. And that is just what defendants are trying to justify here. The Fingerhut billing statements state the total amount owed and required to be paid to bring Bahena's account back to good standing. But this is merely routine billing statement information: this same information was included in the January 2015 billing statement, issued when Bahena was not yet in default. Maybe a merchant could include a proper notice of default and right to cure along with a billing statement, but a routine billing statement that simply states the amount overdue is not notice that complies with the WCA. And a routine billing statement is all that Fingerhut provided to Bahena.

### 3. Whether defendants knew or had reason to know that they did not have a right to file the debt collection lawsuit (WCA claim only)

To prove a violation of § 427.104(1)(j), Bahena would have to prove that defendants acted "with knowledge or reason to know that the right [to sue Bahena] does not exist." Defendants contend that Bahena has adduced no evidence to make this showing. There is no evidence that defendants *actually* knew that Bahena had not been provided a right-to-cure notice. So the question is whether defendants had reason to know that no such notice had been provided to her.

There is little case law on what constitutes "reason to know" for the purposes of § 427.104(1)(j), but the language of the statute evokes negligence and suggests that debt collectors owe a basic duty of care to the debtors they pursue. *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1115 (7th Cir. 2008) (interpreting "reason to know" in § 427.104(1)(j) as "should have known"). This encompasses a general duty to know the law and to avoid violating it. *See, e.g.*, *Seeger v. AFNI, Inc.*, No. 05-c-714, 2007 WL 1598618, at *24, *26 (E.D. Wis. June 1, 2007) ("[A]t issue is whether AFNI knew or should have known that it did not have the right to seek this collection fee. Under the WCA, the creditor has the duty to avoid mistakes of law." (citing *Kett v. Comm. Credit. Plan, Inc.*, 222 Wis.2d 117, 586 N.W.2d 68, 76 (Ct. App. 1998))), *aff'd*, 548 F.3d 1107 (7th Cir. 2008).

To survive summary judgment on her § 427.104(1)(j) claim, Bahena must adduce evidence that defendants had reason to know that they were violating the law by suing her. She has met that burden here. The undisputed evidence shows that at the time they filed suit, the only information defendants had about Bahena was her name and location, how much she owed, the date the account was opened and charged off, the date of her last payment, and 11

of her past billing statements. The file contained no copy of a right-to-cure notice or any other information confirming that such a notice had been provided. There was no way to determine based on the limited information in Bahena's file that her debt was actionable in court.

Nor did defendants make any attempt to obtain the information they would need to confirm that a right-to-cure notice had issued. It is undisputed that Jefferson Capital could have ordered additional of Bahena's account documents for $10 per page. Dkt. 100, ¶ 5 and Dkt. 106, ¶ 5. So Jefferson Capital could have obtained copies of the letters Fingerhut sent Bahena in 2015, which would have shown that the letters did not comply with the requirements of § 425.104(2). *See supra* section (B)(2). Jefferson Capital tries to get around this problem by saying that it relied on the representation of Bluestem Brands, Inc. (the previous servicer of Bahena's account) "that a right to cure was being sent to customers as of at least December 2015." Dkt. 99, at 16 (citing Dkt. 94 (Hovland Dep. 55:10–56:10; 58:13–59:17)). But relying on conclusory, blanket assertions by a third party, without some additional basis for understanding them to be accurate, is not reasonable. If relying on such statements were sufficient to avoid liability under § 427.104(1)(j), it would create a perverse incentive for debt buyers to remain ignorant of the relevant facts and law before filing debt collection lawsuits. *Cf.* 15 U.S.C. § 1692k(c) (mistake of fact does not qualify for the FDCPA's safe harbor provision when debt collector does not maintain "procedures reasonably adapted to avoid any such error").

As for Messerli, it makes no argument why it did not have reason to know that Bahena had not been provided notice of her right to cure. It contends only that it "had a good faith basis to assert in a law suit that Jefferson Capital owns a legal right to collect money from Bahena," Dkt. 78, at 12, and that its lawyers "reviewed the necessary information to make a

reasonable inquiry under the circumstances pursuant to Wis. Stat. § 802.05." *Id.* at 13. Prior to filing the lawsuit, Messerli requested a bill of sale showing that the debt was indeed owed by Jefferson Capital. Dkt. 106, ¶ 18. But Messerli never requested documents that would allow it to verify that a right-to-cure notice had issued, which is a prerequisite to the debt actually being actionable under § 425.105.

The question here is whether Bahena has evidence that Messerli had reason to know that it had no right to sue Bahena. She has that evidence: the lack of any evidence of the notice in Bahena's file, coupled with Messerli's failure to verify that the right-to-cure notice had been sent. Like Jefferson Capital, Messerli had reason to know that it had no right to sue Bahena, so it is not entitled to summary judgment on the § 427.104(1)(j) claim.

### 4. Whether defendants made a materially false misrepresentation (FDCPA only)

Jefferson Capital provides no FDCPA-specific arguments in favor of dismissing the federal claim, such as asserting a bona fide error defense under 15 U.S.C. § 1692k(c). Instead, it rests on the same arguments that it made in arguing for summary judgment on the state law notice-of-right-to-cure claims, which the court need not repeat. For the reasons articulated above, Jefferson Capital has not shown that it is entitled to summary judgment on the § 1692e claim based on its violation of the notice-of-right-to-cure requirement.

Messerli raises two more arguments that relate solely to the FDCPA claim.[1] First, Messerli argues that Bahena has adduced no evidence for her allegation that Messerli falsely represented information in the state court complaint or pleadings, either to Bahena herself or

---

[1] Messerli raises these arguments in the context of its discussion of Bahena's claim under § 1692e(3) regarding attorney involvement in preparing the debt collection lawsuit. But a review of the arguments makes it clear that they apply to Bahena's claim that defendants falsely represented that they had a right to sue her.

to the court. Dkt. 78, at 15. But the court of appeals has already held that the act of filing a lawsuit on an unenforceable debt can itself qualify as a false representation under § 1692e. *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1079 (7th Cir. 2013) (filing a time-barred debt collection action is itself a violation of § 1692e because such a suit falsely implies that the debt collector has legal recourse to collect the debt). Messerli does not explain why that general rule would not apply in this case, and other federal courts in Wisconsin have already held that it does. *See Boerner v. LVNV Funding LLC*, 326 F. Supp.3d 665, 680 (E.D. Wis. 2018) (in case where notice of right to cure had not been provided, court held that "[d]efendants misrepresented the legal status of the debt [sufficient to state a claim under § 1692e] inasmuch as filing the action falsely represented that all of the prerequisite conditions had been satisfied.").

Second, Messerli says that the allegedly false or misleading statements at issue are immaterial because Bahena wouldn't have paid her debts regardless of the type of notice she received. Dkt. 78, at 15–16; *see also* Dkt. 104, at 9, 11–12. This is the same argument that Messerli asserted in relation to the state-law notice-of-right-to-cure claim, and it is no more persuasive in this context.

It is true that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 756 (7th Cir. 2009). To prevail on a claim under § 1692e, Bahena must show that the false or misleading statement at issue had "the ability to influence a consumer's decision." *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 942 (7th Cir. 2011). Messerli says that any failure to provide Bahena with a right-to-cure notice would not have influenced her decision-making because she testified that

18

she had run out of money and had stopped looking at her billing statements. This argument fails for two reasons.

First, as already discussed, the failure to provide notice is not the "misrepresentation" at issue for the purposes of § 1692e; the act of filing a lawsuit on an unenforceable debt constitutes a misrepresentation, because it falsely implies that a debt collector holds a valid right to sue. The filing of such a lawsuit is highly likely to influence a consumer's payment decision. *See, e.g.*, *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 879 (N.D. Ill. 2018) (holding that a debt collector's misleading statement was material where it implied that the debt collector had a right to file a collection suit when it did not).

Second, contrary to Messerli's suggestion, Bahena need not show that the misleading statements actually caused *her* to make a payment for the statements to be material under § 1692e. *See id.* ("Defendants appear to conflate materiality and causation of actual damages . . . . [I]t is not necessary for plaintiff to prove that [the misleading statement] actually caused him . . . to make a payment to defendants."). What matters is whether the statements were the type that would mislead an unsophisticated consumer, which is the case here.

Because Messerli's representation that it had the right to sue Bahena was both false and material, Messerli is not entitled to summary judgment on this ground.

## C. Claim for misrepresentation of attorney involvement

The FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). A communication purporting to be from an attorney "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). If, however, the communication "is

not the product of the attorney's professional judgment—if [s]he has not independently determined that the debt is ripe for legal action by reviewing the debtor's file, for example . . . then the [communication] is misleading" and violates § 1692e. *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

Bahena alleges that Messerli violated § 1692e(3) by filing the state-court collection action against her without meaningful involvement by an attorney. Bahena contends that Messerli's attorneys were too overworked and time-pressed to devote any meaningful consideration to Bahena's case. In support of her theory, Bahena adduces evidence that the signature of Jillian Walker (a Messerli lawyer) appeared on 73 new cases during the week that the state-court action against Bahena was filed. Dkt. 106, ¶ 45. She contends that Walker spent minimal time reviewing Bahena's complaint. *Id.* ¶ 44. She also argues that the consumer account information in Messerli's files is too meager to enable meaningful review, and that their use of a template-based automated interface allows for mass generation of summonses and complaints without meaningful attorney oversight.

Federal courts in Wisconsin have acknowledged that allegations of extreme attorney workload and minimal attorney oversight can state a claim for relief under § 1692e(3). *See LoMastro v. Baxter Credit Union*, No. 17-cv-962-wmc, 2018 WL 5885536, at *5 (W.D. Wis. Nov. 9, 2018) (allegations that "the decision to file suit without required notice was procedurally improper and that the named attorney . . . would not have had sufficient time to address his unusually large caseload" was sufficient to state a claim); *Boerner*, 326 F. Supp. 3d at 682–84 ("[I]t can be inferred from Boerner's allegations regarding [the attorney's] workload that he did not have sufficient time to render a professional legal judgment about the merits of the . . . suit prior to its being filed."); *Satran v. LVNV Funding, LLC*, No. 17-cv-896-jdp, 2018

WL 2464486, at *7 (W.D. Wis. June 1, 2018) (factual allegations that "the complaint was procedurally improper and the attorney who signed the complaint was attorney of record in an unusually large number of cases . . . suggest[ed] that she was not applying her professional judgment to each case" and stated a plausible claim for relief under § 1692e(3)); *Bahena v. Jefferson Capital Sys., LLC,* No. 17-cv-461-jdp, 2018 WL 2464485, at *5 (W.D. Wis. June 1, 2018) (incorporating analysis from *Satran*). But this is the first time a court has had occasion to evaluate the evidence of such a claim on summary judgment.

The court will deny Messerli's motion on this claim because there are genuine disputes of material fact about the actual level of attorney involvement in bringing Bahena's case. Bahena provides printouts from Messerli's case-tracking software purportedly showing that Walker spent only one minute reviewing and preparing Bahena's case before signing the complaint. Dkt. 106, ¶ 44; *see also* Dkt. 96, at 11 (case-tracking printout documenting Walker's pre-filing review). Walker's case load was high, the account information she had access to was limited, and the process by which she prepared and reviewed Bahena's case was formulaic. But Messerli disputes Bahena's allegation, contending that its case-tracking software displays specific time stamps rather than the total time billed for a particular action. *Id.* Whether Walker actually exercised professional judgment is a disputed question of fact to be resolved by the jury. Because a reasonable jury could find that the debt collection action was not the product of an attorney's professional judgment, the court will deny Messerli's motion for summary judgment on Bahena's § 1692e(3) claim.

## D. Emotional distress damages

Both the FDCPA and the WCA allow for the recovery of damages related to emotional distress if the plaintiff can show that the damages were caused by a violation of the statute. *See*

15 U.S.C. § 1692k; Wis. Stat. § 427.105. Messerli argues that Bahena is not entitled to any damages for emotional distress because she has not adduced sufficient evidence that her emotional distress was the result of any unlawful conduct by defendants. But once again, Messerli appears to misapprehend the nature of the underlying legal violations. Contrary to Messerli's suggestion, Bahena need not show that she experienced emotional distress because she never received a notice of her right to cure. Rather, she must show that her emotional distress derived from defendants' legal action against her, taken when they had no right to do so. It was only by virtue of the state-court action that defendants "claim[ed], attempt[ed], or threaten[ed] to enforce a right with knowledge or reason to know that the right d[id] not exist" in violation of § 427.104(1)(j). And it was only by virtue of the state-court action that defendants used a "false, deceptive, or misleading representation or means in connection with the collection of a[] debt" in violation of § 1692e. The state-court action also gave rise to a false implication that an attorney had deemed the action warranted under existing law, in violation of § 1692e(3). The relevant question, then, is whether the state-court action caused Bahena's emotional damages.

Messerli says that Bahena's allegations of emotional distress are too conclusory to raise any genuine dispute of material fact about causation. But Bahena's emotional distress allegations are actually fairly specific. She contends that being sued caused her "major anxiety" that was so severe that her boyfriend "almost called the ambulance a few times" because he thought she might be having a heart attack. Dkt. 106, ¶ 74. She says that by the time she found a lawyer, she "was suicidal" over the lawsuit, and that she shared these feelings with her boyfriend. *Id.* ¶¶ 78–79. She had trouble sleeping, cried a lot, began drinking too much, and started taking Lorazepam. *Id.* ¶¶ 73, 80. This testimony distinguishes Bahena from the

plaintiffs at issue in the cases Messerli cites, whose allegations of emotional distress were so conclusory as to be unverifiable. *See, e.g.*, *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 608, 609 (7th Cir. 2005) (conclusory statements that defendant's actions were "degrading or humiliating" and caused "anguish" were insufficient to survive summary judgment on FCRA claim).

Messerli also suggests that Bahena has not met her burden to show that her damages resulted from its unlawful conduct because Bahena did not seek advice from her doctor until a year after the state-court action was dismissed, and because she did not consult with him about the emotional fallout from defendants' unlawful actions. It suggests that Bahena's emotional distress stemmed from other problems in her life, and that she was "not truthful in her deposition when she said the cause of her distress was a lawsuit that was initiated without a notice of right to cure." Dkt. 78, at 24. But whether Bahena lied or exaggerated is an issue of credibility to be resolved by the jury. It does not entitle defendants to summary judgment.

## E. Punitive damages

Finally, Messerli contends that Bahena is not entitled to punitive damages. As to the FDCPA, Messerli is correct. The language of the statute provides that private parties are limited to actions for "any *actual damages* sustained by such person as a result of [a debt collector's] failure" to comply with the act. 15 U.S.C. § 1692k (emphasis added).

But the WCA does allow for punitive damages. *See* Wis. Stat. § 425.301(1) ("Recoveries under chs. 421 to 427 shall not in themselves preclude the award of punitive damages in appropriate cases."). In Wisconsin, a "plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.043(3). Proving that a

defendant acted with intentional disregard does not require showing "an intent to cause injury. . . . The injured party need only show a wanton, willful or reckless disregard of the rights of others on the part of the wrongdoer." *Strenke v. Hogner*, 279 Wis.2d 52, 65, 694 N.W.2d 296, 302 (2005) (quoting *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 221, 291 N.W.2d 516 (1980)).

In this case, the evidence demonstrates that neither Jefferson Capital nor Messerli made any effort to verify that they had perfected their right to sue Bahena before filing suit. If, as Bahena contends, this is defendants' common practice, it is possible that a reasonable jury would conclude that defendants have demonstrated a wonton, willful, or reckless disregard of the rights of consumers. So the court will deny Messerli's motion for summary judgment as to Bahena's claim for punitive damages under the WCA.

## F. Summary judgment for nonmovant on notice-of-right-to-cure claims

Neither Jefferson Capital nor Messerli are entitled to summary judgment. Bahena did not move for summary judgment as to liability on her notice-of-right-to-cure claims, but the issues defendants raised are questions of law that the court has resolved in Bahena's favor. It does not appear that there are any disputed material facts that a jury would need to resolve to determine liability, so it is not clear whether a trial on liability is required.

A court may grant summary judgment to a party on the court's own motion so long as the opposing party has notice and an opportunity to show that summary judgment is not appropriate. Fed. R. Civ. P. 56(f)(1); *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 529 (7th Cir. 2011). The court will give defendants an opportunity to show cause why summary judgment should not be granted to Bahena as to liability on the notice-of-right-to-cure claims so that the trial on those counts is limited to the issue of damages.

ORDER

IT IS ORDERED that:

1.  The motion for summary judgment filed by defendant Jefferson Capital Systems, LLC, Dkt. 68, is DENIED;

2.  The motion for summary judgment filed by defendant Messerli & Kramer, PA, Dkt. 77, is DENIED;

3.  Defendants may have until February 5, 2019, to show cause why summary judgment should not be granted to plaintiff Traci Bahena as to liability on the notice-of-right-to-cure claims.

Entered January 29, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge